IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARREN R. GENTILQUORE, :
       Plaintiff :
   v. : Case No. 3:11-cv-257-KRG-KAP
CORRECTIONS OFFICER SMEAL, :
et al., :
       Defendants :

## Report and Recommendation

### Recommendation

I recommend that docket no. 68 be denied and that docket no. 69 be granted in part and denied in part. Summary judgment should be entered in favor of defendants Passanita and Smeal on the claim that they injured Gentilquore on April 13, 2010. Summary judgement should be denied to both sides and the matter should proceed to trial on the claim that defendant Thal injured Gentilquore on January 22, 2010.

### Report

Plaintiff Darren Gentilquore was an inmate at S.C.I. Houtzdale in 2010. While he was at S.C.I. Albion in 2012 Gentilquore filed four complaints in the Middle District of Pennsylvania in 2012 alleging several violations of his federal constitutional or statutory rights. The Middle District took Gentilquore's money and sent the work here. After screening I recommended that Gentilquore's complaints be consolidated into one action, that some claims be dismissed and that some go forward, and that Gentilquore file an amended complaint. After service of the amended complaint I issued an order directing the parties to brief

certain issues for summary judgment. Both sides filed summary judgment motions, plaintiff at docket no. 68, and defendants at docket no. 69. Upon consideration of the record I recommend that summary judgment be entered in favor of defendants Passanita and Smeal. The matter should proceed to trial on plaintiff's claim that defendant Thal injured Gentilquore on January 22, 2010.

Gentilquore alleges that he has shy bladder syndrome and is thereby unable to provide a urine sample on demand as the Pennsylvania Department of Corrections expects when it conducts a random drug test of inmates. Gentilquore alleges that on January 22, 2010 defendant Thal, a corrections officer at Houtzdale, deliberately twisted Gentilquore's left wrist, hand, and fingers as an act of "personal revenge" because Gentilquore had wasted his time by being unable to provide a urine sample. Thal's motion for summary judgment asserts as its sole argument that Gentilquore missed the two-year statute of limitations. That is incorrect. Gentilquore filed timely in the Middle District, and the reason that Thal appears for the first time in April 2012 as a defendant at this particular case number was due solely to my consolidating the complaints under Fed.R.Civ.P. 42.

As for the claims against corrections officer Smeal and Passanita, defendants have submitted as Exhibit B to their motion for summary judgment a video of the events on April 13, 2010 that Gentilquore contends violated his Eighth Amendment right not to be

subject to excessive use of force. The factual background to the video is not disputed: on the evening of April 13, 2010, Gentilquore was housed in E pod of H Block, an RHU unit, when inmates at either end of the pod stopped up their water supply in order to cause inconvenience to everyone by flooding the cells. After the water was shut off the corrections officers began moving inmates off the pod so that the cells could be cleaned. Gentilquore asserts that when he was outside his cell being cuffed Passanita and Smeal "slamm[ed]" into the floor and then "jump[ed]" on him, knocking him unconscious and causing him permanent injury. The defendants assert that Gentilquore was "being physically aggressive" and attempting to escape from the corrections officers' control by pushing himself back from the wall and attempting to turn around, and that the officers took him to the ground "to regain control of the situation."

The video does not fully support either side's interpretation. It is important to keep in mind that the video (without audio) is from a single stationary camera with a fixed focus and field of view, and that it was not specifically placed to capture this particular event. Although for those reasons it is less than ideal for capturing any nuances in interpersonal contact, the video shows that an inmate (not disputed to be Gentilquore) is outside his cell between two corrections officers (not disputed to be Smeal and Passanita) and a white-shirted

(supervisory) officer. The location is the concrete-floored upper tier walkway approximately five feet wide that runs along the upper bank of cells down to the corner where there is a set of stairs and the walkway makes an acute angle and continues outside the opposite bank of cells. On the video it appears that while the supervisory officer is talking, at least twice Gentilquore (who is facing the wall away from the officer and is cuffed behind his back) pushes himself away from the wall and toward the corrections officer that is between him and the railing (three horizontal tubular metal bars approximately 2.5" in diameter and approximately 12", 24", and 36" from the floor, with verticals approximately every 6'). After Gentilquore's second advance there is the slightest pause and then one of the corrections officers, the one closer to the railing, grasps or bear hugs Gentilquore and takes him to the ground in the relatively narrow space between the wall of cell doors and the railing around the upper tier of cells. The second corrections officer may be assisting or may just be dragged along because he is not letting go of Gentilquore. The first corrections officer's left foot and lower leg actually go out into unsupported space during this event. A third corrections officer comes down the walkway from where it appears he was engaged in cleanup work. Other corrections officers and inmates apparently engaged in cleanup work leave the second tier and then walk out of the view on the lower level. The corrections officers then attempt to get

4

Gentilquore up and manage to get him to his knees. During the attempt to get Gentilquore to his feet Gentilquore's knees buckle under him, whether because he is dazed or practicing passive resistance it is impossible to tell, but there is no limpness or sag to Gentilquore's head and shoulders that indicates loss of consciousness. While Gentilquore is in a kneeling posture two corrections officers are standing with one hand on each of Gentilquore's shoulders and it appears that the supervisory officer is talking to or examining Gentilquore. Another corrections officer enters the scene from the lower level of the pod, and is putting on a pair of gloves when it appears that he is summoned to the second floor; he briefly leaves the scene, re-enters, and heads up to the second tier. One of the original three officers steps out from those closest to Gentilquore and goes down to vertex of the two rows of upper-tier cells, where the stairs lead off the tier. Yet another corrections officer has also arrived from the lower level and from his gestures appears to be carrying a handheld camera or perhaps a flashlight and appears to be filming Gentilquore. By this time, two and a half minutes into the video, there are no inmates other than Gentilquore present and all the corrections officers are relating in some way to the movement of Gentilquore off the pod, but during at the beginning of the less than four-minute episode (the take-down took place at approximately :20) several inmates and at least two corrections officers have

moved through the camera view; from their gloved hands they appear to have been engaged in the cleanup process. The last minute of the video shows the corrections officers lifting Gentilquore to his feet; although Gentilquore wobbles he remains on his feet. Three corrections officers (one walking backwards and apparently filming the scene), the supervisory officer, and Gentilquore then move down the tier heading, I presume, off the pod. The video then ends.

Gentilquore argues that it is dispositive that a subsequent Pennsylvania Department of Corrections internal review of the use of force concluded that the corrections officers had no good reason to use force to take Gentilquore down. The defendant corrections officers, on their part, argue that the internal review would not even be evidence admissible at trial. Defendants cannot be certain that the report is not admissible, see Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988) (trustworthy internal report containing adverse opinion about employee's action based on factual investigation and not biased by being prepared for litigation was not inadmissible as hearsay), but plaintiff is wrong about the importance of the review. First, the fact that defendants' superiors considered their use of force unjustified is an opinion, which though significant for its effects on prison management and defendants' employment records is not a legal admission either by the Pennsylvania Department of Corrections or on the part of the defendants individually. Second, even an admission that defendants

6

violated Pennsylvania Department of Corrections policies or even state law would not be sufficient to establish liability on a federal Eighth Amendment claim. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984)("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")

Judge Friendly once observed that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). The Supreme Court to some extent adopted Judge Friendly's aphorism in Hudson v. McMillian, 503 U.S. 1 (1992). Hudson v. McMillian held that unnecessary uses of force which cause minor injury are actionable as violations of the Eighth Amendment, but implied by negative inference that de minimis uses of force, even unnecessary ones, are not actionable. Our Court of Appeals has similarly held, in the course of affirming summary judgment granted in favor of a corrections officer who, a jury could have found, gratuitously punched a handcuffed prisoner:

There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person

could conclude that a corrections officer acted maliciously and sadistically.

Reyes v. Chinnici, 54 Fed.Appx. 44, 48 (3d Cir.2002). The evidence here, even construed in the light most favorable to the plaintiff, could not convince any reasonable jury that defendants Smeal and Passanita violated the Eighth Amendment.

It is not the case that a significant injury is required in an excessive use of force claim: the core inquiry is whether the force used was "malicious or sadistic," not whether the extent of injury met a certain threshold. See Wilkins v. Gaddy, 559 U.S. 34 (2010); Smith v. Mensinger, 293 F.3d 641 (3d Cir.2002). Nevertheless, the extent of injury suffered is one factor that objectively indicates how much force was applied, and that objective evidence may suggest whether the use of force could plausibly be regarded as either unnecessary or excessive. Wilkins v. Gaddy, 559 U.S. at 37-38. Although my Celotex/ Rule 56(f) order directed the parties to provide all evidence relevant to the question whether Gentilquore suffered any injury, Gentilquore offers not even a Pennsylvania Department of Corrections DC-457 (a medical incident/injury report) that he suffered any injury, much less the severe permanent injuries that he claims. An inmate's personal opinion that he has suffered injury, much less serious permanent injury, is not sufficient in the absence of objective evidence to create a triable issue of fact.

But more important than the thin nature of Gentilquore's evidence of injury, there is the video showing the events Gentilquore that contends were an excessive use of force. The corrections officer took Gentilquore to the floor in a very narrow space without causing him contact with anything other than the floor, and that contact is controlled, not a trip or a head-first dump. The video also refutes Gentilquore's claim that he was knocked unconscious or jumped on, or in any way struck or subject to use of force after the initial take down.

In short, Gentilquore's Eighth Amendment claim rests entirely on the invalid argument that if any official use of force can be found to be unnecessary it can also be found to be unconstitutional. Wilkins v. Gaddy cannot be stretched so far, even if the Supreme Court showed any sign of wishing to use that *per curiam* opinion to retreat from Whitley v. Albers, 475 U.S. 312 (1986). Despite its vintage Whitley v. Albers remains good law, and in that case the inmate plaintiff, Gerald Albers, was deliberately shot in the left knee by a corrections officer armed with a shotgun during an attempt to rescue a corrections officer who had been taken hostage. The Supreme Court assumed that shooting Albers was unnecessary, and discussed the evidence that tended to show Albers had not been involved in the uprising and indeed had attempted to help resolve matters. The Supreme Court concluded that Albers could not prove a violation of the Eighth

Amendment because his action in climbing a set of stairs toward his cell was "equivocal conduct" that the officer with the shotgun may have thought, even if incorrectly, constituted a threat to the hostage. 475 U.S. at 324-26. Here, Gentilquore's conduct in pushing away from the wall and thereby pushing a corrections officer toward the railing was not even equivocal, since there is no suggestion that Gentilquore had any legitimate purpose in his actions. Even if patience, soothing words, or some other method might have controlled Gentilquore just as effectively as taking him to the floor, for any issue of fact to exist concerning the defendants' liability there must be evidence that they maliciously and sadistically took Gentilquore to the floor to cause him harm, and there simply is none.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 11 August 2014

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Darren R. Gentilquore, GX-1572
S.C.I. Fayette
50 Overlook Drive
Labelle, PA 15450